# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ANDREW DOMENITZ,**

      **Plaintiff,**

**vs.**                                               **Case No.: 8:12-CV-146-T-17EAJ**

**CAROLYN W. COLVIN**
**Commissioner of Social**
**Security Administration,[1]**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case. [2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence

---

[1]   The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2]   The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).   If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.   See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.   See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I. Background

On April 17, 2007, Plaintiff filed an application for DIB, alleging disability beginning August 10, 2005. (T 124)  Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on May 19, 2009. (T 44, 84, 90)  Fifty-six years old at the time of the hearing, Plaintiff has a degree in dentistry and past relevant work experience as a dentist.  (T 51)

On July 16, 2009, an ALJ denied Plaintiff's application. (T 31)  Although Plaintiff's severe impairments included disorders of the cervical and lumbosacral spine and degenerative changes of the shoulders, these impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1.  (T 36-37)  Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") for light work, but must avoid climbing ramps and stairs. (T 37)

Finding that Plaintiff was able to perform his past relevant work as a dentist, the ALJ

concluded that Plaintiff was not disabled during the relevant period.  (T 42-43) On November 15, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (T 1)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

Plaintiff submits that the ALJ erred in: (1) evaluating Plaintiff's severe impairments; (2) assigning weight to the opinions of Plaintiff's treating physicians and the opinion of a single decision maker ("SDM"); (3) formulating Plaintiff's RFC; (4) finding that Plaintiff could perform his past relevant work as a dentist; and (5) failing to identify Plaintiff's transferrable skills.[3]

Because these issues implicate the medical record, a review of the record is necessary.

**Medical Evidence**

Robert A. Young, M.D. ("Dr. Young") treated Plaintiff on September 12, 2005.  (T 224) Plaintiff reported pain in his left shoulder with mild decreased range of motion and right lateral epicondylitus. (Id.)   He had a ganglion cyst on the left wrist and unintentional weight loss.  (Id.) Dr. Young's impression was lateral epicondylitus of the right arm, tendonitis to the right arm, and some pain in the left arm.  (Id.)

Plaintiff complained to Henry W. Hanff, M.D. ("Dr. Hanff") on September 14, 2005 of left shoulder, left wrist, and right elbow problems. (T 419)  After observing that Plaintiff's left shoulder had normal range of motion with subacromial crepitus, Dr. Hanff diagnosed impingement syndrome in the left shoulder, right lateral humeral epicondylitis, and ganglion cyst of the left wrist. (Id.)  Dr.

---

[3]  The six issues have been combined into five issues and addressed in the sequential review process for determining disability claims.

Hanff administered a right elbow cortisone injection and prescribed a tennis elbow strap, physical therapy with ultrasound, Vicodin, and Mobic. (Id.)

On October 21, 2005, Plaintiff told Sang H. Choi, M.D. ("Dr. Choi") that his right lateral epicondylitis was better, but his pain was still there. (T 418)  Plaintiff's pain was laterally at the lateral epicondyle in the superior one third and wrist extension and gripping aggravated the pain. (Id.)  While recommending another injection for the lateral epicondyle, Dr. Choi stated that after six months Plaintiff would have to "live with it" or have surgical treatment. (T 418)  On November 12, 2005, Dr. Choi surgically excised Plaintiff's ganglion cyst on his left wrist; that wound healed with minimal erythema. (T 414, 416)   Plaintiff declined another injection for his right lateral epicondylitis. (T 414)

Wayne L. Wittenberg, M.D., Ph.D. ("Dr. Wittenberg"), a neurologist, reported on October 26, 2006 that Plaintiff had only thirty-percent movement in each direction in his neck. (T 217) Plaintiff complained of pain particularly in the lower neck and upper shoulder and tightness in the rhomboid region. (Id.)  His lumbar and thoracic spine were normal. (Id.)  Dr. Wittenberg observed that Plaintiff had pain in the hands, but his hands were otherwise intact. (T 218)  Dr. Wittenberg diagnosed cervical radiculopathy. (Id.)

On December 13, 2006, Dr. Wittenberg observed ranges of motion in Plaintiff's cervical spine were minimal extension, sixty percent of flexion, and thirty-six percent of side to side. (T 214) Plaintiff's gait was steady, and coordination and sensation were within normal limits. (Id.)  Plaintiff reported "very annoying" thoracic pain and knots and cramps in his spine. (Id.)  Dr. Wittenberg prescribed Soma and Voltarin and referred Plaintiff to pain management. (Id.)

A January 9, 2007 bone scan  revealed "minimal patchy increased uptake within the lower thoracic spine in regions of mild scoliosis, felt to be degenerative." (T 268)  There was "moderate

4

increased activity in the left AC joint, probably degenerative although resulting in asymmetry." (Id.)

Daniel H. Bender, M.D., ("Dr. Bender") a pain management specialist, treated Plaintiff on ten occasions between January 2007 and December 2008 for pain in his neck, left shoulder, and right scapula region. (T 271-86, 371-74, 378-79)  On January 17, 2007, Dr. Bender observed normal neurological function, normal sensation, five out of five strength throughout, and a full range of motion in Plaintiff's thoracolumbar spine, shoulders, elbows, hands, and wrists, but decreased flexion, extension, left rotation, and right rotation in the cervical spine. (T 272)  There were palpable cervical paraspinal trigger points, palpable trigger points in the trapezius, and palpable parascapular trigger points. (Id.)  Plaintiff had a painful mild left shoulder arc. (Id.)  Dr. Bender noted degenerative changes of the left acromioclavicular joints on the left and tenderness to palpation of the left AC joint. (Id.)  His impression was chronic left shoulder pain, left rotator cuff tendonitis, left acromioclavicular osteoarthritis, chronic neck pain, cervicogenic headache, cervical degenerative joint disease, and right elbow tendonitis. (Id.)  Dr. Bender prescribed Vicodin and Soma. (Id.)  On January 25, 2007, a left shoulder x-ray revealed evidence of degenerative changes in the AC joint. (T 267)  In February 2007, Dr. Bender also observed that Spurling's maneuver produced neck pain to the left and right and hyperextended neck pain. (T 274)

From March 2007 through December 2007, Dr. Bender found that Plaintiff's neck and left shoulder were functional with medication.  (T  275, 277, 281, 283, 285)  Dr. Bender's impression included chronic neck pain, cervicogenic headache, and cervical degenerative joint disease, but no longer included chronic left shoulder pain, left rotator cuff tendonitis, or left acromioclavicular osteoarthritis. (T  276, 278, 282, 284, 286)  He prescribed Norco and Soma.  (Id.)  In April, September, and December 2008, Dr. Bender observed functional ranges of motion in the neck and shoulder with medication, and Plaintiff described his pain as "mild" with medication.  (T 372, 374,

5

379)  Dr. Bender's impression was chronic neck pain, cervicogenic headache, cervical degenerative joint disease. (Id.)  He continued prescriptions for Norco and Soma.  (Id.)

Plaintiff complained on November 9, 2007  to Dr. Choi of pain in the left thumb after a jack handle hit Plaintiff in the thumb (while he had been working on his house) and numbness and tingling in both hands for two to three years that was getting worse and waking him at night. (T 412) Plaintiff wore a carpal tunnel brace that helped somewhat. (Id.)  Plaintiff's lateral epicondyle pain had recently flared up in the last couple of months, most likely due to moving and working on his new home. (Id.)  Plaintiff took Lortab and Soma daily. (Id.)  Dr. Choi observed "a little bit of swelling at the IP joint" and a good range of motion, despite tenderness, in Plaintiff's left thumb. (T 413)  Plaintiff had positive Tinel's and Phalen's in the classic median nerve distribution on both sides of his hand and tenderness at the lateral epicondyle in his right elbow. (Id.)  Wrist extension and gripping caused pain. (Id.)  Dr. Choi diagnosed bilateral carpal tunnel syndrome, gave Plaintiff another carpal tunnel brace, and noted that he might need conduction studies and a release in the future. (Id.)  Dr. Choi administered a shot of cortisone for Plaintiff's chronic lateral epicondylitis. (Id.)  No intervention was necessary for the contusion of the left thumb. (Id.)

On December 3, 2007, John H. Shim, M.D. ("Dr. Shim") noted that Plaintiff's history included C3-C7 anterior cervical fusion and diskectomy at multiple levels. (T 408) Dr. Shim observed a good range of motion of the back and a  poor range of motion of the neck. (Id.)  Plaintiff was neurologically intact in the upper and lower extremities. (Id.)  Cervical spine x-rays showed anterior fusion C3-C7 with a large bony osteophyte and almost autofusion at C2-3; lumbar spine x-rays showed degenerative changes throughout  with advanced disc disease at L5-S1, but mostly at L4-L5. (T 409) Dr. Shim assessed cervical spondylosis and lumbar spondylosis and noted that Plaintiff would have to live with these assessments, as he did not see any surgical indications. (Id.)

6

Plaintiff reported on December 14, 2007 to physician's assistant, Eric E. Cole, PA-C ("Physician's Assistant Cole") that his bilateral carpal tunnel and right lateral epicondylitis were much better. (T 407) Plaintiff used the carpal tunnel braces and the cortisone injection helped the epicondylitis. (Id.)

On April 14, 2008, Plaintiff complained to Dr. Shim of bilateral shoulder pain greater on the right than the left. (T 406) Dr. Shim reviewed x-rays that revealed "significant subacromial spurring development on the right side, lesser so at the left side." (T 405) Dr. Shim observed that Plaintiff had a positive impingement sign on the left shoulder, but an almost normal range of motion. (T 406) As to the right shoulder, Plaintiff was limited at ninety degrees in internal and external rotation. (Id.) Plaintiff had tenderness over the AC joint bilaterally. (Id.) Dr. Shim assessed subacromial impingement bilaterally, right greater than left, and administered a cortisone injection. (Id.)

Dr. Hanff observed on April 16, 2008 limited cervical spine range of motion in all directions; shoulder pain throughout motion with decreased abduction and forward flexion less than ninety degrees; and lateral epicondylar pain bilaterally. (T 400) X-rays revealed subacromial spur bilaterally and early degenerative changes of the right shoulder. (Id.) Plaintiff's elbows were negative for acute pathology. (Id.) Dr. Hanff diagnosed osteoarthritis of the cervical spine; status post cervical spine surgery; bilateral arthritic shoulder impingement; lateral humeral epicondylitis bilaterally; and possible fibromyalgia, arthritis, or connective tissue disease. (Id.) Dr. Hannff advised Plaintiff to avoid positions and activities that caused discomfort and to use a cane; he ordered a number of tests. (T 401) Dr. Hanff stated that did not understand why Plaintiff had been denied Social Security benefits and would complete the forms provided by Plaintiff. (T 400-01)

On March 13, 2009, Plaintiff complained to Dr. Choi of numbness and tingling in his hands. (T 396) Dr. Choi observed that Plaintiff had positive Phalen's and Tinel's signs bilaterally, but his

chornic epicondylitis was doing better on the right. (Id.)  On March 24, 2009, Plaintiff reported numbness and tingling medially and some in the ulnar. (T 390)  Conduction studies were positive for carpal tunnel on both sides, but not the cubital tunnel. (Id.)  An exam revealed bilateral tingling in the little fingers. (Id.)  Nerve conduction studies indicated neuropathy of the right median nerve and a possible mild left median neuropathy at the wrist.  (T 395)  Dr. Choi noted if Plaintiff's left carpal tunnel surgery went well, Plaintiff would have right carpal tunnel surgery. (T 390)  On April 8, 2009, Plaintiff underwent a left carpal tunnel release and a left cubital tunnel release with anterior transposition. (T 470)  Following surgery, Plaintiff was in excellent condition without any problems, and there were no complications. (T 471)[4]

**Opinion Evidence**

On January 16, 1998, Gary D. Gottlieb, PA-C ("Physician Assistant Gottlieb") reviewed x-rays of the cervical spine showing a pseudo-arthoris at C5-6 with angulation and movement on flexion and extension. (T 524)  Physician Assistant Gottlieb noted that Plaintiff was likely disabled for life, as he would have difficulties bending, looking into mouths, and doing things that he would normally do as a dentist. (Id.)

Dr. Wittenberg wrote a letter on October 25, 2006 stating that "[Plaintiff] reports a history of chronic neck pain, for which he has had surgery, and continues to note significant neck discomfort and inability to do his job as a dentist. [Plaintiff] has had the condition for some time and is permanently disabled." (T 219)

On September 14, 2007, SDM Deborah Tyson, ("SDM Tyson") found  that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently and stand, walk, or sit about six

---

[4]  There is no indication in the record that Plaintiff later had right carpal tunnel surgery.

hours in an eight hour workday. (T 290)  Plaintiff should never climb ramps and stairs, but could frequently climb ladders, ropes, and scaffolds. (T 291)

Non-examining physician P.S. Krishnamurthy, M.D. ("Dr. Krishnamurthy") stated on February 25, 2008 that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, stand, walk, and sit six hours in an eight-hour workday, and push and pull without limitation. (T 362)  Plaintiff could only occasionally climb ladders, ropes, and scaffolds due to his limited range of motion of the cervical spine. (T 363)

On December 3, 2007, Dr. Shim opined there was no surgical intervention for Plaintiff's cervical and lumbar conditions and that "[h]e certainly has reason to be disabled secondary to constant neck and back pain." (T 409)  In treatment notes dated April 14, 2008, Dr. Shim noted that Plaintiff would be limited in rotation of the neck and flexion and extension of the neck. (T 403) Plaintiff had dysesthesias to the arms, bilateral impingement syndrome, bilateral carpal tunnel syndrome, and cubital tunnel symptomatology.  (Id.)  Plaintiff could not flex, extend, or rotate the neck without pain or discomfort and could not perform any overhead activities or lifting.  (Id.) Plaintiff could not perform any activities requiring more than "very, very, very sedentary work" perhaps as a reader or writer, but he could not perform any manual functions. (Id.)  Dr. Shim concluded that, "[e]ssentially, he would be considered disabled." (T 404)

Dr. Hanff indicated in a medical source statement dated May 12, 2008 that Plaintiff could continually lift less than ten pounds and seldom lift ten pounds. (T 397) Plaintiff could sit for two hours and stand or walk for one hour in an eight-hour workday. (Id.)  He must be allowed to alternate sitting, standing, and walking every one hour or two hours. (Id.)  Plaintiff could frequently operate leg controls, but was required to occasionally elevate his legs. (Id.)  He could frequently grasp, seldom push and pull, never reach in all directions including overhead, and occasionally

9

handle, finger, and feel. (T 398)  He could occasionally bend and extend his arms out, could seldom

stoop, kneel, and crouch, but could never climb, squat, or reach overhead. (Id.)  Plaintiff must avoid

even moderate exposure to extreme cold and heat, avoid concentrated exposure to wetness,

humidity, noise, and vibration, and avoid all exposure to fumes, dusts, odors, gases, poor ventilation,

unprotected heights, and moving machinery. (Id.)  Dr. Hanf opined,  based on Plaintiff's subjective

symptoms, that Plaintiff continually had pain and that the above limitations were present since at

least August 10, 2005. (T 399)

On May 9, 2008, treating physician and pain management specialist Dr. Bender provided a

medical source statement opining that Plaintiff could seldom lift and carry ten pounds, could sit for

four hours in an eight-hour workday, and stand or walk for one hour in an eight-hour workday. (T

375)  Plaintiff must alternate sitting, standing, and walking every thirty minutes. (Id.)   Plaintiff

could occasionally operate leg controls and was seldom required to elevate his legs. (Id.)   Plaintiff

could frequently grasp, finger, and feel, occasionally push, pull, and handle, and seldom reach in all

directions, including overhead or extend his arms out. (T 376)  Plaintiff could only occasionally

bend, climb, balance, stoop, kneel, crouch, crawl, and squat. (Id.)  He must avoid all exposure to

vibration, unprotected heights, and moving machinery and must avoid concentrated exposure to

fumes, odors, dusts, gases, and poor ventilation. (Id.)  Plaintiff had visual limitations and complained

of pain continually and fatigue occasionally. (T 377)  Dr. Bender reported that the objective clinical

findings that could reasonably be expected to cause these limitations included decreased cervical

flexion, extension, left rotation, and right rotation, palpable cervical paraspinal trigger points, trigger

points in the trapezius and parascapular muscles, degenerative changes of the left acromioclavicular

joints, tenderness of the left AC joint, rotator cuff tendinitis, cervicogenic headaches, status post

anterior cervical discectomy and fusion at C3-4, C4-5, C5-6, and C6-7, and cervical degenerative

10

joint disease. (Id.)

    Dr. Hanff, Dr. Choi, and Dr. Shim practice in the same office. (T 407)

## I.    Severe Impairments

Asserting that the ALJ's description of Plaintiff's severe impairments is too vague to encompass the full range of his impairments, Plaintiff contends that the ALJ erred in assessing his impairments of cervical spine and neck pain, cervicogenic headaches, lumbar spine, shoulder impingement syndrome, and carpal tunnel syndrome.[5]  Plaintiff argues that the ALJ erroneously concluded that Plaintiff had not submitted additional medical records corroborating Plaintiff's testimony.

To be considered disabled, a claimant must have a severe impairment.  20 C.F.R. § 404.1520(c) (2010).  A severe impairment is one that significantly limits the claimant's ability to perform basic work activities.  Id.  Basic work activities are those abilities and aptitudes necessary to do most jobs; for example, the ability to walk, stand, sit, lift, and carry out simple instructions. 20 C.F.R. § 404.1521(b) (2010).  An impairment can be considered as not severe only if it is "a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam).  An ALJ's conclusion that an impairment is not severe must be supported by substantial evidence.  Id. at 921.  The severity of an impairment must be measured "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

---

[5]  Plaintiff is right-handed. (T 52)

The ALJ found Plaintiff's disorders of the cervical and lumbosacral spine and degenerative changes of the shoulders constituted severe impairments. (T 36)  Although some sources speculated that Plaintiff may have shoulder impingement syndrome, the ALJ did not include shoulder impingement syndrome as a severe impairment as it was not corroborated by objective medical findings. (T 37)  The ALJ also determined that Plaintiff's carpal tunnel syndrome was non-severe because it did not meet the durational requirement for a disability impairment as there were no documented neurological abnormalities until March 2009, and Plaintiff had a carpal tunnel release in April 2009 with no evidence of complications. (Id.)

The ALJ permitted Plaintiff to submit medical evidence until June 7, 2009 corroborating Plaintiff's testimony.  (T 34)  Following the hearing and before June 7, 2009, Plaintiff  submitted medical evidence.  However, the evidence that Plaintiff submitted are dated from 1995 to 2000, predate Plaintiff's alleged disability onset date, and fail to corroborate Plaintiff's testimony.  (T 472- 674)  Therefore, the ALJ did not err in noting that no such corroborating evidence was received. Additionally, there is no indication that the ALJ did not review these records.  On the contrary, the ALJ noted that Plaintiff had a consultative psychological evaluation in January 2000. (T 37)  Any failure of the ALJ to discuss these records is harmless.

The ALJ did not err in finding Plaintiff's carpal tunnel syndrome non-severe.  While the ALJ stated that there were no documented neurological abnormalities of carpal tunnel syndrome until March 2009, any error in making this finding is harmless. (T 37) Plaintiff points to November 2007 records showing that Plaintiff complained to Dr. Choi of numbness and tingling in both hands for two to three years that was getting worse and waking him at night. (T 412)  Dr. Choi  diagnosed bilateral carpal tunnel syndrome, gave Plaintiff a carpal tunnel brace, and noted that he might need conduction studies and a release in the future. (T 413)  However, Plaintiff reported to Physician's

12

Assistant Cole on December 14, 2007 that his symptoms were much better. (T 407)  Over a year later, on March 13, 2009, Plaintiff complained to Dr. Choi of numbness and tingling in his hands. (T 396) On April 8, 2009,  Plaintiff underwent a left carpal tunnel release and a left cubital tunnel release with anterior transposition. (T 470)  Following surgery, Plaintiff was in excellent condition without any problems, and there were no complications. (T 471)  There is no evidence that Plaintiff had right carpal tunnel surgery.   The ALJ did not err in finding that Plaintiff's carpal tunnel syndrome was non-severe as it did not last nor could be expected to last for a continuous period of not less than twelve months.  The symptoms Plaintiff reported in 2007 were treated and improved, and Plaintiff's surgery in 2009 for left carpal tunnel was successful.

Regarding Plaintiff's headaches, Dr. Bender diagnosed cervicogenic headache from January 2007 to December 2007 and in April, September, and December 2008.  (T 272, 274, 276, 278, 282, 284, 286, 372, 374, 379)  The ALJ did not err in not discussing Plaintiff's headaches caused by his cervical pain, as a diagnosis alone is insufficient to establish that an impairment is severe. See Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002).

The ALJ mistakenly found that Plaintiff's shoulder impingement syndrome[6] was not corroborated by objective medical findings.  Reviewing imaging studies in September 2005, Dr. Hanff found prominent acromion process in the left shoulder and diagnosed impingement syndrome of the left shoulder. (T 419) In April 2008, Dr. Shim reviewed x-rays of both shoulders, found "significant subacromial spurring developing on the right side, lesser so at the left side," and

---

[6] Shoulder impingement syndrome occurs when the space between the acromion and rotator cuff narrows when the arm is raised to shoulder height; the acromion can rub against (or "impinge" on) the tendon and the bursa, causing irritation and pain. See Johnson v. Astrue, 816 F. Supp. 2d 752, 760 n.12 (W.D. Mo. 2011).  An acromion is "the lateral extension of the spine of the scapula, projecting over the shoulder joint and forming the highest point of the shoulder." Dorland's Illustrated Med. Dictionary 26 (26th ed. 1985).

diagnosed subacromial impingement bilaterally, right greater than left. (T 405-06)  Dr. Hanff also reviewed x-rays, observed early degenerative change of the right shoulder, and diagnosed bilateral arthritic shoulder impingement in April 2008. (T 400)  The record indicates that two physicians diagnosed Plaintiff with shoulder impingement syndrome based on x-rays.

However, substantial evidence supports that Plaintiff's shoulder impingement syndrome was non-severe.  In January and February 2007, Plaintiff's shoulders had a full range of motion, despite mild painful arc in the left shoulder. (T 272, 274)  From March 2007 through December 2007, Dr. Bender found that Plaintiff's shoulders had a full range of motion and were functional with medication.  (T 275-278, 281-86)  In April, September, and December 2008, Plaintiff's shoulders had a full range of motion and were functional with medication, and Plaintiff described his pain as mild with medication. (T 39, 372, 374, 379)  Although Plaintiff was diagnosed with shoulder impingement syndrome, the ALJ did not err in finding Plaintiff's shoulder impingement syndrome non-severe. See  Sellers, 246 F. Supp. 2d at 1211; see also Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1270 (11th Cir. 2007) (finding that an ALJ may properly omit limitations that are relieved by medication).

Accordingly, the ALJ did not err in characterizing Plaintiff's severe impairments as disorders of the cervical and lumbosacral spine and degenerative changes of the shoulders.  Substantial evidence supports the ALJ's assessment of the severity of Plaintiff's impairments.

## II.    Opinion Evidence

Plaintiff submits that the ALJ failed to discuss or assign weight to Physician Assistant Gottlieb's opinion pursuant to Social Security Ruling ("SSR") 06-03p[7] and failed to assign weight

---

[7]  SSR 06-03p provides guidance for considering non-acceptable medical source opinions. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  Although Plaintiff cites SSR 06-03p, as agency

to Dr. Bender's opinion.  Plaintiff asserts that the ALJ erred in crediting the opinion of SDM Tyson over the opinions of Dr. Hanff, Dr. Wittenberg, Dr. Bender, and Dr. Shim.  Plaintiff argues that the ALJ should have re-contacted Dr. Wittenberg and Dr. Shim pursuant to SSR 96-5p.[8]

In assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam) (citation omitted).  Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citation omitted).  "Good cause" exists when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding, or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records.  Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citation omitted).  Rejection of a treating physician's opinion must be supported by clearly articulated reasons.  Id. at 1241.

The ALJ may discount a treating physician's opinion if it is not well-supported by medical evidence or is inconsistent with the record as a whole.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159-60 (11th Cir. 2004) (per curiam).  Further, the weight afforded a physician's conclusory statements regarding a claimant depends upon the extent to which the statements are supported by

---

rulings are neither statutes nor regulations, the agency's ruling does not have the force and effect of law.  See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished).  Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

[8] SSR 96-5p provides: "[I]f the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." SSR 96-5p, 1996 WL 374183 (July 2, 1996).

clinical or laboratory findings and are consistent with other evidence of record. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam). The ALJ may reject an opinion that is so brief and conclusory that it lacks persuasive weight or is unsubstantiated by any clinical or laboratory findings. Hudson v. Heckler, 755 F.2d 781, 784 (11th Cir.1985) (per curiam).

The opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) (citation omitted).   Nevertheless, the opinion of a one-time examiner is "not entitled to great weight." Crawford, 363 F.3d at 1160 (citation omitted). The opinion of a non-examining, reviewing physician standing alone does not constitute substantial evidence. Sharfarz, 825 F.2d at 280 (citation omitted).  However, it is not improper for an ALJ to consider the reports of consulting physicians, as long as the opinion of the treating physician is accorded proper weight. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam).  If the ALJ articulates good cause for discrediting the treating and examining physicians' opinions, an ALJ is entitled to rely on a non-examining physician's opinion when it is consistent with the medical record and the treating and examining physicians' underlying clinical findings. Flowers v. Comm'r of Soc. Sec., 441 F. App'x 735, 742-43 (11th Cir. 2011) (per curiam) (unpublished).  An SDM designation connotes no medical credentials, and an SDM with no apparent medical credentials is not an "acceptable medical source" and is entitled to no weight.  Siverio v. Comm'r of Soc. Sec., 461 F. App'x 869, 871-72 (11th Cir. 2012) (per curiam) (unpublished); see 20 C.F.R. § 404.1513 (listing "acceptable medical sources").

Additionally, the ALJ has a basic duty to develop a full and fair record. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).  The ALJ must probe into all relevant facts, even where a claimant is represented by counsel.  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  If the evidence received from a treating source is inadequate to determine whether the claimant is

16

disabled, the Commissioner may recontact the treating source for additional information or clarification. 20 C.F.R. § 416.912(e) (2011).  Although the ALJ has a duty to develop a full and fair record, there must be a showing of prejudice to warrant remand for further development of the record.  Robinson v. Astrue, 365 F. App'x 993, 995 (11th Cir. 2010) (per curiam) (unpublished) (citing Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam)).

The ALJ did not err in failing to discuss or assign weight to Physician Assistant Gottlieb's opinion, as a physician's assistant is not an acceptable medical source and not entitled to any special weight.  See 20 C.F.R. § 404.1513(a).  Additionally, this opinion is dated January 16, 1998, which is more than seven years prior to Plaintiff's alleged disability onset date of August 2005.

In evaluating the state agency medical consultant's assessments, the ALJ found that Dr. Krishnamurthy's opinion that Plaintiff could perform medium work was consistent with the RFC determined by ALJ Burdette in a previous decision. (T 42)  The ALJ noted that Plaintiff did not appeal ALJ Burdette's decision and no objective medical findings in the current record established that Plaintiff's impairments worsened since ALJ Burdette's decision. (Id.)  However, the ALJ resolved any doubts in Plaintiff's favor by restricting Plaintiff to light work.  (Id.) Finding that an RFC for a wide range of light work was supported by SDM Tyson's opinion, the ALJ assigned significant weight to SDM Tyson's opinion that Plaintiff could perform light work.  (Id.)

The ALJ mistakenly referred to SDM Tyson as a medical consultant and accorded significant weight to her opinion. (T 42)  The ALJ's sole reliance on SDM Tyson's opinion is reversible error. See Siverio, 461 F. App'x at 871-72 (holding that the ALJ erred in relying solely on a SDM's opinion without substantial evidence remaining in the record to support the RFC assessment). Accordingly, the ALJ's assignment of significant weight to SDM Tyson's opinion requires remand.

As remand is required, and the findings could change on remand, it is unnecessary to

address Plaintiff's other arguments regarding the Commissioner's evaluation of treating physicians' opinions as well as Plaintiff's RFC, past relevant work, and transferability of skills.  See <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam).  However, the Commissioner concedes that review of Plaintiff's past relevant work is not as thorough as it could have been. (Dkt. 18 at 19) On remand, the ALJ shall address Plaintiff's past relevant work and Plaintiff's transferable skills.

<u>**Conclusion**</u>

As discussed above, the Commissioner's decision is remanded for additional fact-finding as is necessary to complete the sequential evaluation. In reaching this conclusion, however, this Court expresses no views as to what the outcome of the proceedings should be. On remand, each side shall be afforded an opportunity to introduce additional evidence on the issues presented.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)     The decision of the Commissioner be **REVERSED** and the case be

      **REMANDED** for further proceedings consistent with the forgoing; and

(2)     The Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. <u>Shalala v. Schaefer</u>, 509 U.S. 292, 302-03 (1993); <u>Newsome v. Shalala</u>, 8 F.3d 775, 779-80 (11th Cir. 1993).  The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorney's fees under 42 U.S.C. § 406(b) must be filed no later than thirty (30) days after the date of the Social Security letter sent to the plaintiff's counsel of record at the conclusion of the Agency's past due benefit calculation stating the amount withheld for attorney fees.  See <u>In re Procedures for Applying for Attorney Fees</u>

under 42 U.S.C. §§ 406(b) and 1383(d)(2), No. 6:12-mc-124-CRL-22 (M.D. Fla. Nov. 13, 2012).


**Date: July 19, 2013**

ELIZABETH A JENKINS
United States Magistrate Judge


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).